FULLER v. CALKINS *et al.*

1. **Official Bond:** REVENUE COLLECTOR: LIABILITY OF DEPUTY. A district collector of internal revenue, being answerable to the government for all moneys coming into the hands of his deputies, may recover against a deputy and the sureties in his official bond in an action thereon for moneys which said deputy has received by virtue of his office and failed to pay over to such collector, without first showing that he has paid over to the government the amount for which he brings suit.

2. ——— MONEYS RECEIVED BEFORE DUE. Nor is it a good defense in an action against such deputy and the sureties in his official bond conditioned for the payment by such deputy to his principal " of all moneys that may come into his hands by virtue of his office," that the money received was for taxes on incomes not levied and due until *after* the payment of the same to the deputy. For although paid by the tax payers, before due or formally levied, yet, being received by the deputy collector as, and in satisfaction of, such tax, it " comes into his hands by virtue of his office," and he is bound to pay over the same to the collector.

*Appeal from Dubuque District Court.*

THURSDAY, JUNE 13.

PLAINTIFF was the collector of internal revenue in the third collection district of this State, and appointed the defendant, Calkins, his deputy for the county of Clayton, in said district.

The deputy, on the 25th of November, 1862, executed his bond in due form with the other defendants, as his

sureties; took the oath of office, and entered upon the discharge of his duties. This bond contained, among others, the following conditions: that the deputy should pay over all moneys to the said Fuller, or his successor, that might come into his hands from time to time by virtue of his office; at all times render a just and true, and faithful account of all his doings as deputy collector, and, in every manner, perform said duties faithfully. It is averred that, of the moneys collected by the deputy, he failed to pay over two thousand dollars, and hence this action. The answer admits the execution of the bond and denies all the other averments. Trial by the court upon an agreed state of facts; judgment for plaintiff, and defendant appeals.

*Bissell, Shiras & Ballou* for the appellant.

*Cooly & Eighmy* for the appellee.

WRIGHT, J.—On the trial it was admitted that all the money collected by Calkins, was paid over, except 1. OFFICIAL $560.86, and that this was collected in the BOND: revenue collect- month of April, 1865, on the income assessed or: liability of deputy. for 1864. Defendants insisted that the tax payers had no right to pay, nor the deputy to receive this money at that time. And judgment was to be entered for plaintiff or defendants, as the court might determine under the law, when applied to said facts.

Appellant's argument, in brief, is this: Sureties on official bonds are only liable for the failure of the principal to perform an official duty; that they are not liable for the improper performance or non-performance of an act not required; that such obligations are construed strictly in favor of the sureties; that the tax on incomes for the year 1864 was not levied until May, 1865, and that, therefore, the money received during the month of April did not come into the deputies hands by virtue

Fuller v. Calkins.

of his office; that it was but a deposit to be applied on the tax when levied. It is also insisted that it is not shown that plaintiff is liable for the money to the United States, nor that he has paid it to the government; that the tax payers are still liable, and that plaintiff or the government may collect the same.

The government holds the principal collector liable for the faithful collection and payment over of the revenue levied in his district. He takes bonds from his deputies, as in this instance, to protect himself against their delinquencies. Whether he has or has not paid over that with which he stands charged, can make no difference in a controversy between himself and deputy. If he has, of course he may recover; if he has not, he is liable to, and, being liable, he may hold the deputy liable at once for his omission of official duty. The money passes, not from the deputy to the government, but to the principal, and from him to the government; and it would certainly be a hard rule which would hold that the deputy could not be sued until the principal had paid; for the very object of the suit is to compel the deputy to perform his duty, and thus enable the principal to fulfill his. So that we have no hesitation in holding that, if defendants are otherwise liable, they cannot escape responsibility upon the ground that plaintiff has not shown that he has paid the amount to the government.

If it appeared that, by judicial action or otherwise, the government did or could not hold plaintiff liable, a dif-
2. —— moneys ferent question would arise. As the record
received
before due. stands, however, the only question is, whether these sureties can be held for this money, the deputy having received it in April, or, as is claimed, before the levy? The case of *Morris* v. *Van Voast* (19 Wend., 283), cited by appellants, we may remark, does not bear remotely upon the point above ruled.

We concede the proposition stated by appellants, that the liability of the sureties is to be measured by strict law, and that they are only liable for the failure of the principal to perform an official duty. In looking at or construing the obligation, however, we must put that construction upon it which the language employed fairly and reasonably implies. In this respect, the same rules should be applied to all those who have jointly obligated themselves in the undertaking. True, the principal may be liable outside of the bond, and the sureties released. But, if the instrument by its terms covers the defalcation charged, the sureties must be held equally with their principal. *Gilbert* v. *Isham*, 16 Conn., 525.

This bond obligated the deputy to *pay over to plaintiff* or his successor *all moneys that might come into his hands by virtue of his office.* The statute did not prescribe the conditions to be inserted in such bonds, but did authorize the district collector to require security from the deputy, (ch. 172, § 10, act 38 Congress). There is no condition, as in *Foxcroft* v. *Nevins* (4 Greenl. 72), that the collector was to "well and truly collect all such rates, for which he should have *a sufficient warrant* under the hands of the assessors according to law, and pay the same into the treasury." In that case, the undertaking was special and specific, and it was held that the sureties were not liable for moneys collected, when the assessments were not signed by the assessor, and communicated to the collector as required by law. The correctness of this ruling even, strikes us at least questionable, and yet, it does not reach the present case. See *Keller* v. *Savage*, 20 Maine, 199; *Johnson* v. *Goodridge*, 15 Id., 29; *Ford* v. *Clough*, 8 Greenl., 374. The case of *Kipp* v. *Wiggett* (1 L. & E., 365), while somewhat analagous, differs in the important fact, that no duplicate of assessment, nor warrant for collecting the same, were *ever* delivered to the collector.

Fuller v. Calkins.

Now, it is true that the duties on incomes, under the law, were to be *levied* on the 1st day of May, and were due and payable on or before the 30th day of June, in each year., Chap. 172, *supra*, § 119. But, suppose before the formal levy the tax payer, knowing the amount of his assessment, voluntarily pays the same to the deputy and takes his official receipt, how else is the money received by the collector than by virtue of his office? There is no suggestion that the levy was not made, nor that the certified lists were not transmitted, in due form, by the assessor to the collector, and by the latter to his deputies. Indeed, we see nothing in the law forbidding the transmission of these lists before the 1st of May. Nor is there any thing in the record excluding the conclusion that the lists were in the hands of the deputy at the time this money was paid. See §§ 11, 18, 19, 20, 28, 34, 119, chap. 172. The substance of the whole matter, however, is that, though the collector may not have been legally bound to receive this money at the time, yet he did receive it, and, as we are bound to presume, executed the usual and proper receipts, and entered the proper memorandum on the tax list at the time, or so soon as the same was placed in his hands. By so doing he was in no just sense the mere custodian or trustee of the tax payers, holding the funds for their use and alone liable to them, or individually to the government, for the faithful application of the funds. This was public money, funds in his hands by virtue of his office, revenue which he was bound to account for and pay over; and, by the very terms of the bond, the sureties were liable therefor. As was said in *Warren County* v. *Ward* (21 Iowa, 84), the officer was perhaps not bound to take the money, but he *did*, accepting it as collector, and he is therefore bound for it as money received by virtue of his office.

Affirmed.